No. 10,061.

JEAN DESLOTTES ET AL. VS. BALTIMORE AND OHIO TELEGRAPH
COMPANY.

At the request of a customer a country merchant telegraphed to his New Orleans merchant
to ship two barrels of bi-sulphite of lime, the dispatch being addressed to 291 Rampart
street. This street has two divisions, known as North and South Rampart street, each
having a No. 291. The name not appearing in the directory the defendant's messenger
carried the dispatch to 291 north Rampart, and being informed by the servant that S.
Kahn lived there, left the dispatch and accepted the receipt of the householder. It
turned out that Kahn lived on south Rampart; the dispatch did not reach him and the
goods were not sent. Plaintiffs, at whose request the country merchant sent the dis-

patch, were sugar planters who required the bi-sulphite to save their cane, which had been frosted, and they sue defendant for $2500 for sugar and molasses lost. Held:

1. There was no privity between plaintiffs and defendant, the evidence showing that the country merchant acted, not as agent, but as merchant seeking to supply himself with goods in order to sell the same to a customer at a profit, and that the goods, if shipped, would have remained his property and at his risk until sold to the customer at a price agreed.

2. The failure to deliver resulted from the insufficient and incomplete address, and from no negligence of defendant, who pursued the customary and only practical method of conducting its business.

3. The damages claimed are too remote and wanting in causal connection. There is no reason why the default of a telegraph company in delivering an order for goods should be visited with heavier penalty than the default of a common carrier in the delivery of goods actually shipped, viz : the value of the goods at the point of destination.

APPEAL from the Civil District Court, for the Parish of Orleans. *Monroe*, J.

---

*Leonard, Marks* and *Bruenn* for Plaintiffs and Appellants.

*J. R. Beckwith* for Defendant and Appellee :

Telegraph companies, in the absence of statutory provisions, are not common carriers ; their liability is not measured by the same rules ; their relation to their patrons is one of contract. Western Union Telegraph Company vs. Carew, 15 Mich. 525 ; Baldwin vs. U. S. Telegraph Company, 45 N. Y. 744 ; Ellis vs. American Telegraph Company, 13 Allen ; Leonard vs. Telegraph Company, 41 N. Y. 544 ; 2d Thompson on Neg. 836.

The rule of damages for non-delivering telegraphic messages is its natural and necessary consequence of the breach of the contract as contemplated by the parties interpreting the contract, in the light of the circumstances under which and the knowledge of the parties of the purpose for which it was made ; and when a special purpose is intended by one party, but is not known by the other, and is not indicated by the message itself, such special purpose will not be taken into account in the assessment of damages for not sending. Baldwin vs. Tel. Co., 45 N. Y. 744 ; Cory vs. Thames Iron Works, L. R., Q. B. 181 ; Leonard vs. Tel. Co., 41 N. Y. 544 ; Hadley vs. Baxendel, 9 Exch. 341 ; U, S. Tel. Co. vs. Gildersleeve, 29 Maryland 232 ; Landsberger vs. Tel. Co , 31 Barb. 533 ; U. S. Tel. Co. vs. Wenger, 55 Pa. 262 ; Caudee vs. Tel. Co., 34 Wis, 471.

" The law, for wise reasons, imposes upon a party subjected to injury from the breach of a contract, the active duty of making reasonable exertions to render the injury as light as possible. Public interest and sound morality accord with the law in demanding this ; and if the injured party, through negligence or willfulness allows the damages to be unnecessarily enhanced, the increased loss justly falls on him." Hamilton vs. Mc-Pherson, 28 N. Y. 72, 76. This is the general rule, but most aptly stated in this case.

*Causa proxima non remota spectatur*, applies where a telegraph company is in default, but their default is made to a party only by the operation of some other intervening cause. Lowrey vs. Tel. Co., 60 N. Y. 198.

---

The opinion of the Court was delivered by

FENNER, J. On the 14th December, 1885, I. Wildenstein, a merchant of Jeannerette, in this State, sent the following dispatch over defendant's line :

" Jeannerette, La. Ship without delay two barrels bi-sulphate in

liquid. I. Wildenstein. To S. Kahn, 291 Rampart street, New Orleans."

S. Kahn is a small merchant in New Orleans whose name does not appear in the city directory, and defendant had no guide to his location except the address in the dispatch.

Rampart street crosses Canal street, and above the latter is designated as south Rampart and below as north Rampart, and the numbering in each direction begins at Canal, so that there is a 291 Rampart above and also below Canal.

The messenger charged with the delivery of this dispatch took it to 291 north Rampart, which he found to bear the sign of Dr. Souchon. He says: "I pulled the bell and the servant came out. I asked her if Mr. S. Kahn lived there. She said Dr. Souchon lived there. I asked her if S. Kahn lived there, and she said yes, and she took the message and gave me ten cents. She signed the receipt in the name of 'Mrs. Dr. Souchon.'"

Shortly afterwards, Wildenstein called on the operator in Jeannerette and inquired if the message had been delivered. The operator communicated with the New Orleans office and was answered that it had been delivered, which answer he communicated to Wildenstein.

It turned out that S. Kahn lived at 291 south Rampart street, and of course the message never reached him, and the order was not filled.

Now come the plaintiffs, Deslottes and Lejeune, who are cultivators of sugarcane near Jeannerette, who aver that on December 14, 1885, their cane on 22 acres had been so effected by cold and frost that in order to manufacture the same into sugar and molasses it was necessary to have promptly two barrels of bi-sulphate of lime in liquid; that finding none of that article in Jeannerette they requested their merchant, Wildenstein, to telegraph for it; that he did accordingly telegraph, and that if the message had been delivered the bi-sulphate would have been received in time to save their cane; but that, owing to the fault and negligence of defendant in not making such delivery it was not received and they incurred thereby a loss of twenty-five hundred dollars, for which they now seek to hold defendant responsible.

Plaintiffs have no case for various reasons, viz.:

1. The evidence does not establish such privity between plaintiffs and defendant as would sustain the recovery. Wildenstein appears to have acted not as agent of the plaintiffs, but as a merchant who, at the request of a customer, sought to supply himself with goods which the latter wanted, in order to sell the same to him at a profit. The

goods would have been the property, and at the risk, of Wildenstein until sold to plaintiffs at a price agreed on.

2. The evidence does not bring home such negligence to defendant as would make it liable for the non-delivery. The failure resulted from the improper or incomplete address of the dispatch. It was addressed to No. 291 Rampart street, without designating north or south, and was delivered at No. 291 Rampart street, after due inquiry and assurance that the party lived there. Had the address been 291 south Rampart street, the mistake would not have occurred. The absence of Kahn's name from the directory left defendant no means of determining which of the two Ramparts was meant, and the course pursued in making inquiry, and on being informed that the party lived in the house, taking the receipt of the householder or person receiving the dispatch, conformed to the customary and only practical method of conducting its business.

3. Moreover, the damages claimed are too remote and wanting in causal connection with the negligence complained of. The cause of plaintiffs' loss was the frosting of their cane. There was nothing in the dispatch to advise defendant that, in ordinary course, any such damages might flow from a mistake in delivery. We can discover no reason why the default of a telegraphic company in failing to deliver an order for goods should be visited with heavier penalty than the default of a common carrier in failing to deliver goods actually shipped; and it is well settled that the latter is measured according to the value of the articles. Sedgwick on damages, p. —, Segura vs. Reed, 3 Ann. 695.

Judgment affirmed.